IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARLTON THEODORE LANDIS, | : | CIVIL ACTION NO. 1:19-CV-470 |
| Plaintiff | : | (Judge Conner) |
| v. | : | |
| CORRECTIONAL OFFICER MOYER, BUREAU OF PRISONS, | : | |
| Defendants | : | |

## **MEMORANDUM**

    Plaintiff Carlton Theodore Landis, a prisoner who was housed at all relevant times at the United States Penitentiary, in Lewisburg, Pennsylvania ("USP Lewisburg"), filed an amended complaint against defendants Senior Officer Moyer and the Federal Bureau of Prisons ("BOP"), purporting to sue them under <u>Bivens v. Six Unknown Federal Narcotics Agents</u>, 403 U.S. 388 (1971), state tort law, and the Administrative Procedures Act. Before the court are defendants' motion to dismiss or, in the alternative, for summary judgment; Landis's motion for reconsideration; and Landis's motion for a preliminary injunction. For the reasons set forth below, we will grant defendants' motion to dismiss. Because our analysis begins and ends with defendants' dispositive motion, we do not consider the merits of Landis's motions.

I.   **<u>Factual Background & Procedural History</u>**

Landis's amended complaint arises from a series of events that he alleges began in the fall of 2018 while he was incarcerated at USP Lewisburg. Landis alleges that at some unspecified time in the fall of 2018, he complained to prison officials about a dangerous cell assignment. (<u>See</u> Doc. 78 at 12 ¶ 1). Specifically, Landis claims that he had been forced to share a cell with a prisoner who was "openly adverse" to Landis's prior cooperation with federal authorities. (<u>See</u> <u>id.</u>) According to Landis, prison officials retaliated against him for his complaints "by unjustly revoking his recreation from September 21, 2018, to October 4, 2018." (<u>See</u> <u>id.</u>)

On October 5, 2018, after Landis participated in recreation, defendant Moyer escorted him back to his cell. (<u>See</u> <u>id.</u> at 12 ¶ 2). Landis complained to Moyer that, during recreation, other prisoners had threatened and harassed him about his prior cooperation. (<u>See</u> <u>id.</u>) Landis claims Moyer then threw him against a wall, applied pressure to his neck, buttocks, and groin, and suggested that Landis would not have to worry about such harassment if he "wasn't a snitch." (<u>Id.</u> at 12-13 ¶ 2). Landis alleges he suffered various injuries as a result of this assault, including soreness, bruising, and swelling of his testicles, buttocks, and inner thighs, and swelling of his left eye. (<u>See</u> <u>id.</u> at 16-17 ¶ 15).

Landis asserts that he filed a grievance related to the October 5, 2018 harassment and assault. (<u>See</u> <u>id.</u> at 13 ¶ 3). He claims officials at USP Lewisburg thereafter retaliated against him for filing the grievance by revoking his recreation from October 8, 2018, through June 1, 2019. (<u>See</u> <u>id.</u>) He further claims officials at

2

various BOP facilities continue to retaliate against him by removing his protective custody status and changing his housing assignments.  (Id. at 14-15 ¶¶ 5, 7).

Defendants move to dismiss Landis's amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) or, in the alternative, for summary judgment pursuant to Rule 56.  The motion is fully briefed and ripe for resolution.

## II.   Legal Standards

### A.   Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a claim for lack of subject matter jurisdiction.  See FED. R. CIV. P. 12(b)(1).  Such jurisdictional challenges take one of two forms: (1) parties may levy a "factual" attack, arguing that one or more of the pleading's factual allegations are untrue, removing the action from the court's jurisdictional ken; or (2) they may assert a "facial" challenge, which assumes the veracity of the complaint's allegations but nonetheless argues that a claim is not within the court's jurisdiction.  See Lincoln Benefit Life Co. v. AEI Life, LLC, 800 F.3d 99, 105 (3d Cir. 2015) (quoting CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008)).  In either instance, it is the plaintiff's burden to establish jurisdiction.  See Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).

### B.   Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted.  See FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the

3

complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556. A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

**III.   Discussion**

Defendants' Rule 12(b) motion raises both jurisdictional and merits challenges to Landis's claims. Our analysis begins, as it must, with defendants' challenges to the court's subject-matter jurisdiction.

**A.   Jurisdictional Challenges**

**1.   *Official Capacity Claim Against Defendant Moyer***

Defendants argue first, and correctly, that Landis's Bivens claim against defendant Moyer in his official capacity is barred by sovereign immunity. (See Doc. 120 at 13-14). Sovereign immunity constitutes a jurisdictional bar to claims against the United States and its agencies, unless Congress has specifically waived such immunity. See FDIC v. Meyer, 510 U.S. 471, 475 (1994). Moreover, "[a]n action against government officials in their official capacities constitutes an action against the United States" and is therefore also "barred by sovereign immunity, absent an explicit waiver." Lewal v. Ali, 289 F. App'x 515, 516 (3d Cir. 2008) (nonprecedential); Webb v. Desan, 250 F. App'x 468, 471 (3d Cir. 2007) (nonprecedential).[1] And Bivens does not waive sovereign immunity with respect to claims brought against federal employees sued in their official capacities. See Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 72 (2001). Thus, to the extent Landis attempts to assert a Bivens claim against Moyer in his official capacity, that claim is barred by sovereign immunity

---

[1] The court acknowledges that nonprecedential decisions are not binding upon federal district courts. Citations to nonprecedential decisions reflect that the court has carefully considered and is persuaded by the panel's *ratio decidendi*.

5

and will be dismissed for lack of jurisdiction.  See Lewal, 289 F. App'x at 516; Webb, 250 F. App'x at 471.[2]

### 2. *State-Law Tort Claims*

Landis attempts to sue defendant Moyer for various state-law tort claims, including negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, and assault and battery.  (See Doc. 89 at 3; see also Doc. 149 at 304).  The proper avenue to pursue such tort claims is a suit against the United States under the Federal Tort Claims Act ("FTCA").  See 28 U.S.C. §§ 2674, 2679; CNA v. United States, 535 F.3d 132, 138 n.2 (3d Cir. 2008) ("The Government is the only proper defendant in a case brought under the FTCA.").  The FTCA allows federal prisoners to sue the United States for injuries sustained while incarcerated.

---

[2] Landis counters that he can proceed on his official-capacity claim against Moyer because he seeks only declaratory and injunctive relief on that claim.  (See Doc. 149 at 5).  However, Landis is no longer housed at USP Lewisburg.  Article III of the United States Constitution provides that the judicial power of the United States shall extend to "cases" and "controversies."  See U.S. CONST., art. III, § 2. "[F]ederal courts may adjudicate only actual, ongoing cases or controversies," Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990), and "[i]t is a basic principle of Article III that a justiciable case or controversy must remain 'extant at all stages of review, not merely at the time the complaint is filed,'" United States v. Juvenile Male, 564 U.S. 932, 936 (2011) (citation omitted).  Generally, a prisoner's transfer from the facility complained of moots claims for equitable and declaratory relief. See Sutton v. Rasheed, 323 F.3d 236, 248 (3d Cir. 2003); Johnson v. Wenerowicz, 440 F. App'x 60, 62 (3d Cir. 2011) (nonprecedential) (prisoner's request for injunctive and declaratory relief against named defendants was rendered moot by transfer to another prison).  Because Landis is no longer incarcerated at USP Lewisburg, he does not present a live case or controversy for injunctive or declaratory relief against Moyer regarding the policies or practices at that facility.

See 28 U.S.C. § 2674. Federal district courts have jurisdiction over civil actions against the United States for damages

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). The court may not entertain a civil suit for a claim cognizable under Section 1346(b) against "any employee of the Government while acting within the scope of his office or employment." See 28 U.S.C. § 2679(b)(1).

As a threshold matter, we note that Landis expressly states that he does *not* want his complaint construed as "asserting any claim under the Federal Tort Claims Act." (See Doc. 89 at 2). Thus, to the extent Landis's complaint appears to pursue an FTCA claim, he has expressly disavowed it. Landis believes he can nonetheless proceed on his tort claims against defendant Moyer under the common law because Moyer acted outside the scope of his employment when he committed the alleged torts. (See Doc. 149 at 6-7; see also Doc. 89 at 2-3). Upon review of the allegations of the complaint, there is no question Moyer was acting within the scope of his BOP employment at the time of the alleged incidents. See CNA, 535 F.3d at 146-47 (looking to state-law factors to determine if conduct was within scope of defendant's employment, namely, if it is "the kind [the employee] is employed to perform," "occurs substantially within the authorized time and space limits," and "is actuated, at least in part, by a purpose to serve" the employer). The complaint offers no factual allegations whatsoever suggesting Moyer acted outside the scope

of his employment; to the contrary, it establishes he was working in his capacity as a corrections officer within USP Lewisburg at the time of the alleged incidents.

Accordingly, the United States is the only proper defendant with respect to any tort claim Landis seeks to pursue, and those claims must be brought under the FTCA. Landis has been adamant that he does not want to proceed against the United States under the FTCA; he wishes to proceed only against defendant Moyer, which as a matter of law, he cannot do. See 28 U.S.C. § 2679(b)(1). Thus, the court will grant defendants' motion to dismiss these claims for lack of jurisdiction.

### B. Merits Challenges

#### 1. *Administrative Procedures Act*

Landis asserts that he is suing under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq.*, to compel the BOP to comply with its own policies. (See Doc. 78 at 14-15). The APA creates a private right of action for judicial review of "final agency action for which there is no other adequate remedy in a court," see generally 5 U.S.C. §§ 702, 704, and waives the sovereign immunity of the United States for claims falling within the Act's ambit, see id. § 702. Pursuant to Section 706 of the APA, a reviewing court may set aside a final agency action if it is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." See id. § 706(2)(A).

The parties dispute whether Landis's APA claim arises from a "final agency action." But they ignore a threshold legal hurdle—Landis's claims are not cognizable under the APA. In Section 3625 of Title 18 of the United States Code, Congress explicitly provided that "sections 554 and 555 and 701 through 706 of [the

APA] do not apply to the making of any determination, decision, or order" under certain statutes governing federal imprisonment. See 18 U.S.C. § 3625; see also id. §§ 3621-3624, 3626. The referenced statutes concern BOP security classifications and housing determinations, see id. § 3621(b), as well as claims with respect to remedies for prison conditions, see id. § 3626. Our court of appeals has held that Section 3625 effectively forecloses judicial review under the APA of prisoner claims challenging security classifications, housing designations, and similar decisions made by the BOP. See Burnam v. Marberry, 313 F. App'x 455, 456 (3d Cir. 2009) (nonprecedential) (citing 18 U.S.C. § 3625; Martin v. Gerlinski, 133 F.3d 1076, 1079 (8th Cir. 1998)); see also Murray v. Young, No. 12-1673, 2012 WL 5398628, at *5 (M.D. Pa. Nov. 5, 2012) (APA claim not available for challenge to placement in special management unit (citation omitted)); Harrison v. Fed. Bureau of Prisons, 248 F. Supp. 3d 172, 182-83 (D.D.C. 2017) (citing Burnam v. Marberry, No. 07-CV-97, 2008 WL 4190785, at *7 (W.D. Pa. Sept. 10, 2008), aff'd, 313 F. App'x 455, and noting "housing and security determinations . . . fall into [exempt] category"). As the Eighth Circuit explained in Martin, the effect of Section 3625 is to "preclude[] judicial review of agency adjudicative decisions but not of rulemaking decisions." See Martin, 133 F.3d at 1079.

Landis's APA claim falls squarely within the category of claims exempted from judicial review by Section 3625. Landis challenges the BOP's adjudicative decisions changing his protective custody status and housing assignments and denying him recreation. (See Doc. 78 at 15; Doc. 149 at 7-8). As we observed *supra*, Section 3625 eliminates any private cause of action under the APA for such claims.

See 18 U.S.C. § 3625 (incorporating, *inter alia*, Section 3621(b), as to housing and security determinations, and Section 3626, as to remedies for prison conditions); see also Burnam, 313 F. App'x at 456. Landis, for his part, fails to acknowledge this bar to his APA claim, much less attempt to surmount it. Accordingly, we conclude that the claim under the APA, as styled in Landis's pleading, is incognizable as a matter of law. We will dismiss Landis's APA claim.

### 2. *Bivens Excessive-Force Claim*

Defendants next move to dismiss Landis's excessive-force claim on the basis that there is no Bivens remedy available for this Eighth Amendment claim following the United States Supreme Court's decision in Ziglar v. Abbasi, 582 U.S. ___, 137 S. Ct. 1843 (2017).[3] In Bivens, the Supreme Court recognized an implied damages remedy for a Fourth Amendment violation committed by federal officials, whose conduct was not encompassed by the statutory remedy available against state actors under 42 U.S.C. § 1983. See Bivens, 403 U.S. at 397. More than 50 years have passed since Bivens was handed down in June 1971. In that time, the Court has extended the Bivens remedy only twice: first, to a claim for gender discrimination under the Fifth Amendment's Due Process Clause, see Davis v. Passman, 442 U.S. 228, 248-49 (1979), and later to a claim for inadequate prison medical care under the

---

[3] Defendants also move to dismiss any claims against the BOP under Bivens. (See Doc. 120 at 17). In the amended complaint, Landis clarifies he is only raising a Bivens claim against defendant Moyer. (See Doc. 78 at 16; see also Doc. 149 at 8). We therefore construe Landis's pleading as stating a Bivens claim against Moyer alone.

10

Cruel and Unusual Punishment Clause of the Eighth Amendment, see Carlson v. Green, 446 U.S. 14, 18-23 (1980).

The Abbasi decision invoked by defendants sets forth a two-part test for determining whether a prospective Bivens claim may proceed. First, courts must ascertain whether the case presents a "new context." See id. at 1859. If the case differs "in a meaningful way from previous Bivens cases decided by th[e Supreme] Court, then the context is new." Id. And the meaning of "new context" is "broad." See Hernandez v. Mesa, 589 U.S. ___, 140 S. Ct. 735, 743 (2020). Second, if the case presents a new context, the court must then consider whether "special factors" counsel against extending the Bivens remedy. See id. This inquiry asks whether "the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." See Egbert v. Boule, 596 U.S. ___, 142 S. Ct. 1793, ___, slip op. at 7 (2022) (quoting Abbasi, 137 S. Ct. at 1858). If a court concludes that "even a single reason" exists to pause "before applying Bivens in a new context or to a new class of defendants," then special factors counseling hesitation exist and a Bivens remedy does not lie. See id. (quoting Hernandez, 140 S. Ct. at 743) (internal quotation marks omitted); Hernandez, 140 S. Ct. at 743.

The Supreme Court's decision in Egbert v. Boule, 596 U.S. ___, 142 S. Ct. 1793 (2022), handed down just last month, reemphasized that the Court's continued refusal to "imply a similar cause of action for other alleged constitutional violations" is intentional—recognizing a new Bivens cause of action is "a disfavored judicial activity." See Egbert, slip op. at 2, 6 (quoting Abbasi, 137 S. Ct. at 1857; Hernandez,

11

140 S. Ct. at 742-43). Egbert clarified that the two-step process laid out in Abbasi "often resolve[s] to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." See id. at 7. In other words: if there is "*any* rational reason (even one) to think that *Congress* is better suited" to determine the propriety of a cause of action, then a Bivens action cannot proceed. See id. at 11. The court must broadly inquire whether "there is any reason to think that 'judicial intrusion' into a given field might be 'harmful' or 'inappropriate'"—and if the answer is "yes," or even *potentially* yes, the plaintiff cannot recover under Bivens. See id. (quoting United States v. Stanley, 483 U.S. 669 681 (1987)). Mindful of Egbert's recent clarification and emphasis on the presence of special factors, we proceed with Abbasi's two-step analysis.

### a. New Context

Landis alleges that defendant Moyer used excessive force against him in violation of his Eighth Amendment rights. There is no question that Landis's excessive-force claim presents a new context—it is "different in a meaningful way from previous Bivens cases decided by [the Supreme] Court." See Ziglar, 137 S. Ct. at 1859. Landis's instant claim on its face "bear[s] little resemblance" to "a claim against FBI agents for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary; and a claim against prison officials for failure to treat an inmate's asthma," the contexts previously recognized by the Supreme Court. See Ziglar, 137 S. Ct. at 1860. Landis is correct that Bivens itself involved an excessive-force claim; that claim, however, arose under the Fourth Amendment, not the Eighth, and in an entirely different factual

12

setting.  As the Supreme Court recently reminded us, such "superficial similarities" are insufficient to justify creating a Bivens remedy.  See Egbert, slip op. at 10 (quoting Abbasi, 137 S. Ct. at 1859) (observing that even "almost parallel circumstances . . . are not enough").[4]

Of the three cases in which the Supreme Court has recognized Bivens claims, only Carlson—involving an Eighth Amendment claim for failure to provide medical care—is tenably relevant.  In Carlson, a prisoner's estate filed suit alleging that prison officials had been fully aware of the prisoner's serious "chronic asthmatic condition" as well as the "gross inadequacy" of medical facilities and staff at the Federal Correctional Center in Terre Haute, Indiana.  See Carlson, 446 U.S. at 16 n.1.  The estate alleged officials failed to provide the prisoner "competent medical attention for some eight hours after he had an asthmatic attack," including an inordinate delay of his transfer to an outside hospital, all of which led to the prisoner's death.  See id.

At the outset, we note that the Supreme Court's approach to the Fifth Amendment claims of prisoner abuse raised in Abbasi suggests it may not find excessive-force claims to be within Carlson's scope.  The claims at issue in Abbasi

---

[4] Landis contends that his claim does not arise in a "new" context, but assumes for the sake of argument that the court will disagree with him, alleging that he "*knows* that this Court . . . is more concerned with managing its docket instead of weeding out clarity in the midst of argumentation." (See Doc. 149 at 9).  Just last year, this court wrote at length on the question of whether prisoner excessive-force claims under the Eighth Amendment constitute a "new context" in light of Abbasi.  See Hill v. Lappin, 561 F. Supp. 3d 481, 486-88 (M.D. Pa. 2021) (Conner, J.)  Rather than merely incorporating our analysis from Hill, we reiterate that analysis in full herein for Landis's benefit.

13

arose under a different constitutional amendment than this case, and they involved markedly different facts (a warden's alleged deliberate indifference to an abusive environment toward certain immigration detainees after the September 11, 2001 terrorist attacks), see Abbasi, 137 S. Ct. at 1863-64, but they were, in essence, claims of failure to remedy prisoner mistreatment.  The Court conceded the case had "significant parallels to . . . Carlson," which it also characterized as a "prisoner mistreatment" case.  See id. at 1864.  But the Court nonetheless refused to extend Bivens to the claims before it, concluding the type of mistreatment alleged—"that a warden allowed guards to abuse pre-trial detainees"—was meaningfully different than the mistreatment at issue in Carlson.  See id. at 1864-65.  The Court noted, *inter alia*, that the constitutional claims were distinct, the law as to the scope of the warden's supervisory responsibilities was not as refined, and there may have been other remedies available.  See id.  These differences, the Court reasoned, were enough to set the case apart from Carlson.  See id.

      Landis's claim is also markedly different from the Eighth Amendment inadequate medical care claim recognized in Carlson.  See Mammana v. Barben, 856 F. App'x 411 (3d Cir. 2021) (nonprecedential) (rejecting prisoner's argument that Carlson gives footing to Eighth Amendment conditions-of-confinement claim against federal prison officials).  The claims do arise under the same constitutional amendment, but a common constitutional basis is simply not enough to link a new Bivens theory to an existing Bivens context.  See Hernandez, 140 S. Ct. at 743 (indicating courts must "look beyond the constitutional provisions invoked").  Nor is it enough that the new theory matches an existing context at a high level of

14

generality, *i.e.*, "prisoner mistreatment." Cf. Abbasi, 137 S. Ct. at 1864-65; see also Hernandez, 140 S. Ct. at 743 ("[O]ur understanding of a 'new context' is broad.").

Other than high-level parallels, Landis's claim differs meaningfully from Carlson. It differs in terms of the nature and scope of the misconduct alleged, and it differs in the legal standards and judicial guidance that would apply to that misconduct. See Abbasi, 137 S. Ct. at 1860; see also Mammana v. Barben, No. 4:17-CV-645, 2020 WL 3469074, at *3 (M.D. Pa. June 25, 2020) (Brann, J.) (noting differing elements for medical-deliberate-indifference and conditions-of-confinement claims), aff'd, 856 F. App'x 411. We conclude that Landis's excessive-force claim presents a new context for purposes of Bivens.

### b. Special Factors

Having concluded Landis's claim presents a new context, we must ask whether "there are any special factors that counsel hesitation" in extending Bivens. See Hernandez, 140 S. Ct. at 743 (internal quotation marks and alterations omitted) (quoting Abbasi, 137 S. Ct. at 1857). Although courts may consider various special factors, see Bistrian v. Levi, 912 F.3d 79, 90 (3d Cir. 2018) (citing Abbasi, 137 S. Ct. at 1856-63), two "are 'particularly weighty': availability of an alternative remedial structure and separation-of-powers concerns," see Mack v. Yost, 968 F.3d 311, 320 (3d Cir. 2020) (quoting Bistrian, 912 F.3d at 90).

In its recent decision in Egbert, the Supreme Court reiterated its prior emphasis on the availability of alternative remedies, see Egbert, slip op. at 13, further extending the Court's longstanding view that "when alternative methods of relief are available, a Bivens remedy usually is not," see Abbasi, 137 S. Ct. at 1863

15

(citing Bush v. Lucas, 462 U.S. 367, 386-88 (1983); Schweiker v. Chilicky, 487 U.S. 412, 425-26 (1988); Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 73-74 (2001); Minneci v. Pollard, 565 U.S. 118, 125-26 (2012)). The BOP's administrative remedy program provides just such an alternative process for seeking relief. See Malesko, 534 U.S. at 68 (holding that "administrative review mechanisms" can provide "meaningful redress"—even if they do not "fully remedy the constitutional violation"). And Egbert makes clear that the question for this court is not whether a Bivens damages remedy would be more effective, nor even whether the existing remedy is sufficient. "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a Bivens remedy." Egbert, slip op. at 13. The existence of the BOP's administrative remedy process "independently forecloses" a Bivens remedy in this new context. See id. at 12.

Assuming *arguendo* the BOP's administrative remedy program does not constitute an alternative remedy, we must still consider whether there are other factors—in particular, separation-of-powers concerns—that weigh against creating a Bivens remedy to fill the void. See Wilkie v. Robbins, 551 U.S. 537, 550 (2007). The essential inquiry "is 'who should decide' whether to provide for a damages remedy, Congress or the courts?" See Abbasi, 137 S. Ct. at 1857. Thus, any special-factors assessment must seek to discern whether Congress would want the federal judiciary to impose "a new substantive legal liability" in a particular case. See id. at 1857-58. In Egbert, the Supreme Court stressed that "even one" reason to believe

16

the federal legislature is better equipped to provide a damages remedy means a Bivens action cannot proceed. See Egbert, slip op. at 11.

Congress's silence, particularly when it has already legislated in a given sphere, can be "telling" in this analysis. See Abbasi, 137 S. Ct. at 1862, 1865. The Supreme Court has suggested that Congress's omission of a "standalone damages remedy against federal jailers" from the Prison Litigation Reform Act ("PLRA"), enacted 15 years *after* Carlson, may imply a congressional intent to limit Carlson's damages remedy to its context. See id. at 1865. Our court of appeals has disagreed with this notion as a broad proposition, opining Congress's silence in the PLRA does not necessarily signal legislative intent that "a Bivens cause of action should not exist at all." See Bistrian, 912 F.3d at 93; see also Mack, 968 F.3d at 323-24 (quoting Bistrian, 912 F.3d at 93). But as one panel of the court more recently observed, "congressional silence on prison litigation can still counsel hesitation in *some* contexts," particularly when—as here—the alleged mistreatment is "different . . . than that alleged in Carlson." See Mammana, 856 F. App'x at 415.

We conclude the claims *sub judice* warrant hesitation. The Supreme Court has never extended Bivens to excessive-force claims against federal prison officials. As we have previously observed, such claims squarely implicate BOP policy and are "inextricably tied to the preservation of institutional rules and order." See Hill, 561 F. Supp. 3d at 489. Adjudicating prisoner excessive-force claims would also "entangle the federal judiciary in byzantine issues of prison administration and institutional security and would impact BOP operations 'systemwide.'" See id. (quoting Abbasi, 137 S. Ct. at 1858) (citing Mammana, 2020 WL 3469074, at *4). For

17

all these reasons, we hold, as this court and many others have now concluded,[5] that special factors weigh decisively against extending Bivens to this new context. The court, therefore, declines to extend Bivens to Landis's Eighth Amendment excessive-force claim and his claim will be dismissed.

### C.     Leave to Amend

Our court of appeals requires district courts to grant leave to amend before dismissing a civil rights complaint for failure to state a claim, unless amendment would be inequitable or futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d Cir. 2002); Phillips, 515 F.3d at 245 (citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004)). The court finds that amendment would be futile for several reasons. First, amendment cannot remedy the many jurisdictional and legal defects that we have identified in Landis's amended complaint; these defects are incapable of being cured by an amended pleading. Second, to the extent other problems with Landis's pleading are factual in nature, we have already granted Landis leave to file several

---

[5] See, e.g., Bone v. Ebbert, No. 3:19-CV-112, 2022 WL 943036, at *7-9 (M.D. Pa. March 29, 2022) (declining to extend Bivens to prisoner's Eighth Amendment excessive-force claim); Figaro v. Pistro, No. 21-CV-2346, 2021 WL 2577071, at *2-3 (E.D. Pa. June 22, 2021) (noting Third Circuit has not recognized a Bivens claim for excessive force under the Eighth Amendment); Hill, 561 F. Supp. 3d at 490 n.5 (holding Eighth Amendment excessive-force claim is a new context and special factors counsel against extending Bivens remedy) (citing, *inter alia*, Brown v. Nash, No. 3:18-CV-528, 2019 WL 7562785, at *4-6 (S.D. Miss. Dec. 13, 2019) (concluding Bivens did not extend to prisoner's Eighth Amendment claim of excessive force, noting, *inter alia*, that concerns of institutional security counseled hesitation), report and recommendation adopted, 2020 WL 129101 (S. D. Miss. Jan. 10, 2020); Hunt v. Matevousian, 336 F. Supp. 3d 1159, 1169-70 (E.D. Cal. Oct. 1, 2018) (declining to extend Bivens to prisoner's Eighth Amendment claim of excessive force, noting "Congress has been active in the area of prisoners' rights, and its actions do not support the creation of a new Bivens claim")).

amendments to his initial complaint, none of which has remedied the deficiencies in his claims.  See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew, 944 F.3d 478, 483 (3d Cir. 2019) (when prisoner plaintiff "has already had two chances to tell his story . . . giving him further leave to amend would be futile").  We will dismiss Landis's pleading without further leave to amend.

## IV.     Conclusion

We will grant defendants' Rule 12(b) motion (Doc. 115) to dismiss.  An appropriate order shall issue.

/S/ Christopher C. Conner
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:     July 11, 2022